UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHLEEN JOYCE BOBE, | Civil Action No. 17-8374 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | December 18, 2018 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Kathleen Joyce Bobe's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Paul Armstrong's ("ALJ Armstrong") denial of her claim for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Armstrong's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

I.  **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

On November 21, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability as of February 1, 2013 due to an injured back, arthritis in both knees, swelling in her legs, back muscle spasms, and anxiety. (Administrative Record [hereinafter Tr.] 17, 171.) Her claim was initially denied on February 19, 2014, and again on reconsideration on July 16, 2014. (Tr. 17.) Plaintiff then filed a written request for a hearing on September 3, 2014. (*Id.*) On May 5, 2016, ALJ Armstrong held a video hearing in Chicago, Illinois and Plaintiff appeared and testified from Egg Harbor Township, New Jersey. (Tr. 17, 33-35.) Vocational Expert David R. Van Winkle ("VE Van Winkle") also testified. (*Id.*) Subsequently, ALJ Armstrong concluded that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Act from the alleged onset date through the date of the ALJ's decision (i.e., February 1, 2013 through May 24, 2016).[1] (Tr. 17, 24.)

   B. **Factual History**

   **1. Personal and Employment History**

Plaintiff was fifty-four years old at the alleged onset of her disability. (Tr. 168.) She graduated from St. Joe's College in Philadelphia, Pennsylvania. (Tr. 38.) From February 1996 through January 2013, she was the president and comptroller of Chispanic Enterprises, Inc., a wholesale food distribution company that she and her husband owned. (Tr. 38, 172, 265.) In that position, Plaintiff managed the business's finances, oversaw the accounting, bidding, and

---

[1] This Court notes that Plaintiff subsequently filed another application for disability insurance benefits, and that the Commissioner found Plaintiff was disabled as of March 2, 2017. (Pl.'s Br. at 4 n.2, ECF No. 7.) This appeal only pertains to ALJ Armstrong's decision.

purchasing departments, analyzed expenses, and set sales goals. (*Id.*) Plaintiff and her husband closed the business in 2013 because Plaintiff could no longer work. (Tr. 48.)

   **2. Medical History**

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the physical symptoms associated with her disability claim. The following is a summary of the evidence.

On November 28, 2012, Plaintiff sustained injuries to her neck and back from a motor vehicle accident. (Tr. 41, 301.) Plaintiff went to the Emergency Department at AtlantiCare Regional Medical Center. (Tr. 301.) Radiological imaging showed no fractures to her neck or back. (Tr. 22, 301-08.) Plaintiff was prescribed Percocet and Flexeril and was discharged that same day. (Tr. 306.)

On December 13, 2012, Plaintiff presented to Dr. Michael Mehnert ("Dr. Mehnert") with complaints of severe neck and back pain, as well as numbness in her left arm and both legs. (Tr. 22, 316.) Plaintiff was diagnosed with whiplash from her car accident and was advised to begin physical therapy, undergo an MRI of the cervical spine, and continue taking anti-inflammatories and muscle relaxants. (Tr. 318-19.) Plaintiff's MRIs from February 2013 showed herniated discs in her cervical, lumbar, and lumbosacral spine, as well as displacement of her L3 nerve root.[2] (Tr. 22, 327, 376.) Following a reexamination on February 22, 2013, Dr. Mehnert noted that Plaintiff exhibited full strength and that her coordination was intact. (Tr. 22, 331-32.) He recommended that Plaintiff attend physical therapy and see a neurologist for the numbness in her extremities. (*Id.*) On July 17, 2013, spinal specialist Dr. Henry J. Greenwood noted that Plaintiff had yet to begin physical therapy treatment. (Tr. 400.) He also remarked that Plaintiff had a normal gait

---
[2] Subsequent MRIs in 2014 and 2015 showed degenerative changes to Plaintiff's thoracic spine and mild degenerative changes to her cervical spine. (Tr. 22, 1575, 1906-07.)

3

upon examination. (Tr. 22, 401.) Plaintiff began physical therapy on or around October 1, 2013, and as of January 15, 2014, she was undergoing treatment three times a week. (Tr. 22, 458-59, 1885.)

In February and March of 2014, Plaintiff received spinal injection treatments. (Tr. 22, 1878-83.) On June 3, 2014, Plaintiff had a lumbar injection and rhizotomies. (Tr. 22, 1940-42.) On June 23, 2014, neurosurgeon Dr. Fernando Delasotta examined Plaintiff and noted that she walked normally and had intact sensation, no gross motor deficits, and a negative straight leg raise test. (Tr. 22, 1911.) On February 8, 2016, Dr. Jeffrey D. Petersohn of PainCare, P.C. also noted that Plaintiff's straight leg raise test was negative. (Tr. 22, 1768.)

In addition to Plaintiff's neck and back injuries, Plaintiff also suffers from obesity, type-II diabetes, heart arrhythmia, gastroesophageal reflux disease ("GERD"), and irritable bowel syndrome ("IBS"). (Tr. 22, 40-47, 428.) An echocardiogram performed on September 12, 2013 showed an ejection fraction of greater than fifty-five percent, with only mild regurgitation. (Tr. 22, 425-26.) As of February 21, 2014, Plaintiff's type-II diabetes was well controlled with diet and weight loss. (Tr. 22, 588.) In April 2016, gastroenterologist Dr. Michael Krachman noted that Plaintiff experiences occasional attacks of severe cramping and diarrhea related to her IBS, diverticulosis, and GERD. (Tr. 22, 1916.)

### 3. Function Report

In her January 2 and June 2, 2014 function reports, Plaintiff stated that she can prepare simple meals, watch television, read, go to doctors and physical therapy appointments, feed her dog, order groceries online, and sometimes engage in photography. (Tr. 188-94, 215-22.) She complained of being unable to do house or yard work, and having difficulty lifting pots, preparing meals that involve long periods of standing, and sleeping due to pain. (*Id.*) Plaintiff can leave her

house alone and drive her car, but she experiences pain in her thoracic region when she drives. (Tr. 191, 218.) She can handle her own finances, but has difficulty separating dollar bills with her fingers. (Tr. 191-92, 218.) Plaintiff also complained of having difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memorizing, concentrating, and using her hands. (Tr. 193, 219-20.) She uses an electric wheelchair whenever she needs to walk distances greater than one quarter of a mile. (Tr. 203, 221.)

### 4. Hearing Testimony

ALJ Armstrong held a video hearing on May 5, 2016, during which Plaintiff and VE Van Winkle testified. (Tr. 17, 33.) Plaintiff testified that she suffers from various ailments, including bilateral knee arthritis, degenerative disc disease, heart arrhythmia, diabetes, GERD, IBS, and venous insufficiency. (Tr. 40-47.) The pain in her knees and lower back prevent her from sitting for more than fifteen minutes at a time. (Tr. 48-49.) Plaintiff added that she can only stand for ten minutes and walk one quarter of a block before needing to stop due to pain or numbness. (Tr. 51, 54.) Plaintiff testified that she drove to the hearing. (Tr. 47.) She also stated that even if her business was still operational, she would not be able to return to her former position because she can no longer sit all day or concentrate due to her pain. (Tr. 50.) She explained that her prescriptions would interfere with her job because they make her feel fuzzy, sleepy, and uncoordinated. (*Id.*) At the time of the hearing, Plaintiff was taking Flexeril and either Lorazepam or Tramadol, depending on her symptoms. (Tr. 56-57.)

VE Van Winkle testified that Plaintiff's last position as a president and comptroller was sedentary, skilled work. (Tr. 67.) He noted that Plaintiff could perform that type of work as per the national economy, although she could not do so as performed because she lifted and carried up to twenty pounds. (*Id.*)

5

## II.  LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she

accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual

functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In his May 24, 2016 decision, ALJ Armstrong properly applied the five-step disability test before determining that Plaintiff was not disabled. (Tr. 19-24.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity between the alleged onset of her disability through the date of the ALJ's decision. (Tr. 19); *see* 20 C.F.R. §§ 404.1571 *et seq*. At step two, the ALJ found that Plaintiff's bilateral knee arthritis, degenerative disc disease, heart arrhythmia, diabetes, GERD, IBS, obesity, and venous insufficiency are severe impairments because they significantly interfere with work-related activities and are well documented in the record. (Tr. 19); *see also* 20 C.F.R. §§ 404.1520(c).

At step three, ALJ Armstrong found that Plaintiff does not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526). (Tr. 19-21.) In reaching this determination, the ALJ compared Plaintiff's impairments with those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.02, 1.04, 4.05, 4.11, and 5.06.[3] (*Id.*) In considering § 1.02, the ALJ noted that there was no evidence of any of the following: an inability to ambulate effectively; an inability to perform fine and gross movements effectively; or an extreme loss of function of both upper extremities that seriously interferes with Plaintiff's ability to independently initiate, sustain, or complete activities. (Tr. 20.) In considering § 1.04, the ALJ observed that Plaintiff's medical records do not demonstrate compromise of a nerve root or the spinal cord combined with at least one of the ailments listed in §§ 1.04A-C. (*Id.*) In addition, the ALJ clearly considered the adverse effects of Plaintiff's obesity and diabetes before finding that there was "no evidence in the record . . . that

---

[3] Plaintiff does not take issue with the ALJ's findings as to §§ 4.05 (recurrent arrhythmias), 4.11 (chronic venous insufficiency), and 5.06 (inflammatory bowel disease). (*See* Pl.'s Br. at 11 n.4, ECF No. 7.) Therefore, this Court will focus on the ALJ's analysis of § 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine).

10

[Plaintiff's] obese physique aggravates the other impairments so much as to result in list-level severity." (Tr. 20-21.) The findings at step three were supported by objective medical evidence in the record.

Thereafter, ALJ Armstrong followed the proper two-step process to determine Plaintiff's RFC. (Tr. 21-23.) At the first step, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms. (Tr. 22.) At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with evidence in the record. (*Id.*) After careful consideration, ALJ Armstrong found that from the date of onset through the date of his decision, Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) where the claimant lifts or carries 10 pounds occasionally and five pounds frequently, stands or walks for two of eight hours during the workday, and sits for six of eight hours during the workday." (Tr. 21.)

In reaching this determination, the ALJ relied on evidence that Plaintiff was able to walk without assistance, that her straight leg raise tests were negative, and that she had only received conservative spinal treatment.[4] (Tr. 22, 1911, 1913.) He noted that Plaintiff's diabetes was diet controlled and that she was still able to perform daily living activities, such as preparing meals, driving, shopping online, paying bills, and engaging in photography. (Tr. 22-23, 188-95, 588.) Furthermore, ALJ Armstrong fully explained why he was only granting some weight to the opinions of Disability Determination Services' medical consultants, and little weight to the opinions of vocational expert Linda Jones, and Plaintiff's treating chiropractor and nurse. (Tr. 23.)

---

[4] Notwithstanding her spinal injections and rhizotomies, the record reflects that Plaintiff failed to pursue treatment in a timely manner given her delay in starting physical therapy until almost a year after it was first prescribed. (Tr. 400, 459, 1733, 1736.)

11

*See Coleman v. Comm'r of Soc. Sec.*, 494 F. App'x 252, 254 (3d Cir. 2012) (explaining that ALJs may choose whom to credit so long as they do not "reject evidence for no reason or for the wrong reason" (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)). Although Plaintiff takes issue with the ALJ's findings, her claims are not supported by relevant or reliable evidence.

Given Plaintiff's functional limitations, ALJ Armstrong determined at step four that Plaintiff was not disabled because she was able to perform her past relevant work as a comptroller and president. (Tr. 23.) The ALJ's decision is fully supported by VE Van Winkle's testimony that a hypothetical individual limited to sedentary work could perform Plaintiff's past work as "per the national economy." (Tr. 67, 173.) Although Plaintiff may have exceeded the sedentary exertional level at her prior job, the Social Security Rules clarify that "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, [she] should be found to be 'not disabled.'" SSR 82-61; *see, e.g.*, *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009). Thus, the ALJ properly concluded the disability test at step four upon finding that Plaintiff "is able to perform [the job] as generally performed." (Tr. 23); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). There is substantial credible evidence in the record to support his decision.

## IV. CONCLUSION

Because this Court finds that ALJ Armstrong's factual findings were supported by substantial credible evidence in the record and that his legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties